## Ada Coal Co. v. Linville.

(Decided February 4, 1913.)

### Appeal from Knox Circuit Court.

1. Master and Servant—Risk Created by Servant—Rule as to—Exception to Rule—Work Done Under Order of Master.—The rule that the master is not liable to the servant for a risk which he creates in the progress of the work, does not apply where the work is done under the order of the master in the way he directs and the danger is incidental to the work.

2. Master and Servant—Mines and Mining—Liability of Master for Injudy Due to Dangerous Condition of Roof of Mine.—Where the master knows or has reason to know that the roof of a mine is in a dangerous condition, and he puts the servant to work without inspecting the roof, or taking any precaution to learn if it is safe, he is liable to the servant for an injury received by reason of the dangerous condition of the roof which was unknown to the servant.

3. Trial—Affidavit to Impeach Witness—Reading of Affidavit by Plaintiff's Attorney—When Not Substantial Error.—The court allowed the plaintiff's attorney to read to the jury in his argument an affidavit offered on the trial to impeach a witness, though he had declined to allow the affidavit to be read to the jury when it was offered on the trial. Held, not a substantial error, the

affidavit having been shown to the witness and he having been interrogated as to it on the trial.

P. D. BLACK, BLACK, BLACK, GOLDEN & OWENS, J. M. ROBSION and J.*M. GILBERT, for appellant.

J. D. TUGGLE and W. R. LAY, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

John B. Linville while in the service of the Ada Coal Company was injured on December 14, 1910, by some slate falling upon him and brought this action to recover for his injuries. On a trial of the case there was a verdict and judgment for him in the sum of $500. The Coal Company appeals.

The chief complaint on the appeal is that the circuit court should have instructed the jury peremptorily to find for the defendant, and that the instructions which the court gave were erroneous.

The facts of the case as shown by the weight of the evidence are in substance these: Linville was a practical miner, and worked with a man named Jackson who was his partner or buddy. They were engaged in taking out the pillars or pulling stumps. When the coal is gotten out of the rooms in a mine, the pillars between the rooms are taken out and that part of the mine is then abandoned. Linville and Jackson had been at work taking the coal out of a pillar between the fourth right entry and the second right entry. They worked first on the second right entry, and while they were getting out the coal there, there was a fall of slate from the roof of that entry, forcing them to quit. The foreman of the mine, a man named Kinder, was absent, and they laid off until Kinder returned, desiring his direction in the work and not being willing to trust the judgment of the man who was temporarily in charge. The pulling out of the pillars is especially dangerous as they hold up the roof. On the morning of the fourteenth Kinder came by Linville's house and called to him to come on, that he had a place ready for him. Kinder took Linville and Jackson to the fourth right entry and told them to go to work on the pillar at that point. He then went away saying something about sending some props. They proceeded to get the coal out, cutting into the pillar about six or eight inches, and working along its face as directed by Kinder. When they had thus worked

about a half hour the slate fell from the roof. Linville was by the side of a car, which had been placed in the entry for the coal to be loaded on. The car caught the slate and prevented Linville's being more seriously hurt. Kinder testified on the trial that he knew that the roof of an entry gets rotten from the action of the air upon it. He also testified that the slate which fell upon Linville would not have fallen if it had not been loose; that he made no inspection of the roof and that if he had sounded it with a pick, it was probable that he would have learned that it was loose. The proof also shows that the slate would not have fallen if the six inches of coal had not been removed. But when the coal was removed the slate being loose fell and caught Linville.

It is insisted for the Coal Company that the rule is that the master is not responsible for a danger which the servant creates in the progress of the work, and that as this slate would not have fallen if the coal had not been removed from beneath it by Linville and Jackson, the company is not liable. We have recognized the principle referred to in several cases. (See Smith's Admr. v. North Jellico Coal Co., 131 Ky., 196; East Jellico Coal Co. v. Golden, 79 S. W., 291.) But it has no application to the facts of this case. The car had been set there for the men to load as they got the coal down. The rail on which the car stood was only eighteen inches from the pillar. It was impractical to put up a prop between the car and the pillar before getting out the coal. Kinder had put the men at the work and told them to go ahead getting out the coal. There was no suggestion that they should put up a prop or do anything to make the place safe. They were doing simply what he told them to do and in the way he told them to do it. It is not a case where the servant creates a danger in the progress of his work, but a case where the danger existed at the time the master directed the work to be done and was incidental to the work so directed. We therefore conclude that the court properly refused to instruct the jury peremptorily to find for the defendant.

The court in substance instructed the jury that it was the duty of the company to use ordinary care in having the roof inspected by its mine foreman, and that if the foreman knew, or by the exercise of ordinary care should

have known, that the moving of the coal by plaintiff would affect the roof of the entry then the company should have guarded against the danger by more securely propping the roof and making it reasonably safe; and that if the place was dangerous and unsafe, and this was known to the foreman or should have been known to him by the exercise of ordinary care, and the plaintiff did not know and by the exercise of ordinary care could not have known of the danger, they should find for the plaintiff. He also instructed them that if the foreman informed the plaintiff that the place was in a reasonably safe condition, then he had a right to rely upon the statements of the foreman, unless the danger was so imminent or obvious that a person of ordinary prudence would not have undertaken the work. We do not see any substantial error in these instructions as applied to the facts of this case. The proof showed that the foreman had put up one prop before he took the men there, and they had a right to assume that it was safe for them to obey his orders and proceed with getting out the coal. He knew the work they were engaged in was especially hazardous, and he should have taken some precaution to find out whether the roof would stand it before he told them to take out the coal. The cutting into the pillar for six or eight inches was certainly no more than he expected them to do when he told them to go to work. In the other instructions given by the court he set out fully the defendant's side of the case. He told the jury that the company was not an insurer of the safety of the plaintiff and owed him no greater duty for his protection than he owed to himself; that the work of pulling stumps is a hazardous employment and the plaintiff in accepting the employment assumed all the risks incident thereto not due to the negligence of the company; that if he failed to exercise ordinary care for his own safety, he could not recover, and if his buddy, Jackson, was negligent, and he came to his injury through the negligence of Jackson, he could not recover; that he could not recover if he violated the orders of the foreman or did not perform the work in the manner in which they were directed to perform it, or if it was his duty to prop the roof of the mine at the place and they failed to do so, he could not recover. There was evidence that Jackson saw the crack in the roof and warned Linville to get out

of the way, but that he failed to do so. The court gave also an instruction submitting this matter to the jury.

No substantial right of the defendant was affected by the rulings of the court on the questions of evidence complained of. While some of the evidence might properly have been admitted, it would not have had a controlling effect upon the verdict or substantially influenced the result. Jackson was introduced as a witness for the defendant and the plaintiff produced an affidavit which he had made containing statements inconsistent with his testimony on the trial. He admitted signing the affidavit but denied making the statements. The plaintiff offered to read the affidavit to the jury. The court told the jury that they could only consider these matters to impeach Jackson's credit as a witness, and not as substantive evidence against the defendant, and he did not allow the affidavit to be then read to the jury. On the argument of the case the attorney for the plaintiff read the affidavit to the jury over the defendant's objection and after reading it said: "The court told you gentlemen of the jury that you could only consider this affidavit for the purpose of contradicting Wiley Jackson; you now see whether Wiley Jackson is contradicted." There was no substantial error in this. The affidavit was competent to contradict Jackson, and it was not used before the jury for any other purpose. Regularly it should have been read when offered on the trial and might have been read again by the attorney in making his argument to the jury.

Linville was mashed and bruised; he was laid up for several weeks, and for a while after that went on crutches; he suffered from an abscess on the back; and while the evidence as to the extent of his injuries is conflicting we cannot say that a verdict for $500 is so excessive as to warrant us in disturbing it.

Judgment affirmed.