## Wallsend Coal & Coke Company v. Shields' Administrator.

(Decided June 19, 1914.)

### Appeal from Bell Circuit Court.

1. Master and Servant—Mines—Safe Place to Work—Changes Resulting from Servant's Work—Duty of Master.—The duty of the master to use ordinary care to furnish the servant a reasonably safe place to work does not apply where as a result of the servant's work the character of the place is constantly changed, and the place itself becomes dangerous either necessarily or from the manner in which the work is done.

2. Master and Servant—Mines—Personal Injury—Peremptory.—A miner who is engaged in pulling a stump constituting the side of the entry, and is injured by a falling rock, part of which projected into the entry and part of which lay above the coal which the miner himself had removed, cannot recover of the master, since the danger was one of his own creation, and the proximate cause of his injury was his own failure to remove or prop the rock, and under such circumstances a peremptory instruction in favor of the master is proper.

SAMPSON & SAMPSON and LOGAN & BABBAGE for appellant.

H. H. INGERSOLL and N. J. WELLER for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Hiram Shields, while employed in a mine owned and operated by the Wallsend Coal & Coke Company, was struck by a falling rock, and so severely injured that he died in a few months. In this action for damages, his administrator recovered a verdict and judgment against the Wallsend Coal & Coke Company in the sum of $7,000. The defendant appeals.

The accident occurred under the following circumstances:

Shields was about 30 years of age. Besides other experience in and around mines, he had been a practical coal miner for about five years. Defendant's mine No. 1 had been worked out some time prior to July 20, 1910, the day on which the accident occurred. Prior to the accident Shields had but just completed the pulling of a pillar. He applied to defendant's mine boss for another place to work. At that time the 10th right entry in the mine had been mined out. There remained a stump on the right side of the 10th right entry at the corner where that entry turned off from the 3rd main entry. The stump ran along the entry for about 100 feet, and extended back about 40 feet. It consisted of a solid mass of coal. The room neck, which constituted a passage from the entry to the back of the stump, was stopped up by slate, and it was not practicable to mine it from that side. Shields began mining from the far corner of the stump, and worked some five or six days, during which time he took out a large quantity of coal. In doing this work he mined along the rib of the entry for several feet, and back for a distance of several feet. At the point where Shields was injured there was a curve in the entry, and the rock and slate bulged out for a short distance. Shields and his stepson, Delbert Broughton, were working together. The track in the entry was about two feet from the side of the entry. Shields started to the entry to get some oil. As he stepped into the entry he was struck by a large rock about 20 or 23 inches long, and so injured that he subsequently died. Exactly how far this rock projected into the entry does not clearly appear, but it is evident that a portion of it so projected, and that the remainder of it was above the coal which had been previously mined out by Shields. Shields and Broughton claim that Shields was in the entry when he was struck, though several witnesses claim that the rock fell outside of the entry, and within the stump. From his position, however, it is reasonably clear that a part of it fell within the entry and part of it within the stump.

For defendant there was evidence to the effect that the bank boss told Shields to go to the center of the stump and cut a narrow passage entirely through it, and then mine the coal from the back. Shields, instead of doing narrow work, gouged out the coal from a large area. The rock which fell was not a part of the roof of the entry, but was two or three feet lower down, and constituted a part of the side of the entry and a part of the

top of the stump. It was only about 30 inches from the place where the rock was located to the ground. At the time of the accident there were two loaded cars on the track immediately in front of the place where Shields was struck.

It further appears that Shields had fired several shots in order to loosen the coal. Shields also testified that there was nothing wrong with the props furnished by the defendant, but stated that of course he could not prop in the entry.

It is the contention of defendant that the court erred in refusing to give a peremptory instruction in its favor. It is not insisted that it was the duty of defendant to prop the roof of the stump, nor is it claimed that Shields requested props and that defendant failed to furnish them. Plaintiff's case is predicated on the theory that the entry itself was not in a reasonably safe condition, and that ordinary care in inspecting the entry would have revealed this condition. It may be conceded that it is the duty of the mine owner to use ordinary care to keep and maintain the entry of the mine in a reasonably safe condition. This, however, is not an ordinary case of dangerous or defective entry. Where a miner is engaged in pulling a stump, the stump itself is his working place. The perils to which he is subjected are those of his own creation. They grow out of the progress of the work. The duty of the master to use ordinary care to furnish the servant a reasonably safe place to work does not apply where as a result of the servant's work the character of the place is constantly changed, and the place itself becomes dangerous either necessarily or from the manner in which the work is done. Smith's Admr. v. North Jellico Coal Co., 131 Ky., 196; Labatt Master & Servant, Sec. 588; Cleveland, C. C. & St. L. R. Co. v. Brown, 20 C. C. A., 147. Here the outside of the rock did constitute a part of the entry, but the rock itself was above the coal in the stump. It would not have fallen had not the coal been removed. The coal was removed by Shields. Having removed the coal and thus created the danger, it was Shields' duty either to sound the top and remove the rock, or use props to prevent it from falling. He admits that he did not perform either of these duties. Furthermore, the side of the entry consisted of the coal itself which Shields had removed, and the rock and slate above it. The rock did not fall from the top of the entry. It did not fall because the side of

the entry caved in by reason of any negligence on the part of the master. It fell after the side of the entry was converted into a working place by Shields, and as a result of Shields' work, and of his failure either to remove or prop the rock. We, therefore, conclude that the court erred in failing to direct a verdict in favor of the defendant.

Judgment reversed and cause remanded for proceedings consistent with this opinion.