## Interstate Coal Company v. Garrard, by et al.

(Decided March 2, 1915.)

### Appeal from Knox Circuit Court.

1. Master and Servant—Risks—Liability of Master.—The rule that the master is not liable to the servant for a risk which he creates in the progress of the work, does not apply where the work is done under the order of the master, in the way he directs, and the danger is incidental to the work.

2. Master and Servant—Mines—When Master Liable for Injury to Servant in.—Where the master knows, or by the exercise of ordinary diligence could have known, that the roof of a mine was in a dangerous condition, and he put the servant to work therein, he is liable to the servant for any injury received by reason of any dangerous condition of the roof which was unknown to the servant.

3. Master and Servant—Safe Place to Work.—In order to justify the servant in relying upon the assurance of the master that a working place is safe, it is not necessary that the master should use words which, in terms, expressly or directly assure the servant that the place where he is directed to work is a reasonably safe place; it is sufficient if the acts of the master, under all the circumstances, amount to an assurance that the place where he directs the servant to work, is a reasonably safe place.

BLACK, BLACK & OWENS for appellant.

H. C. FAULKNER & SONS, A. T. W. MANNING and DISHMAN, TINSLEY & DISHMAN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Affirming.

The appellee, Albert Garrard, a colored boy 18 years of age, was injured while in the service of the appellant, the Interstate Coal Company, on October 1st, 1912,

by a fall of slate from the roof of appellant's mine. Garrard's back was broken and his lower limbs entirely paralyzed. He brought this action to recover damages for his injuries, and having obtained a verdict and judgment for $2,000.00, the defendant appeals.

The petition alleges, in substance, that Garrard was a mere boy, ignorant and inexperienced in mining; that the appellant knew that fact; that, notwithstanding appellee's ignorance and inexperience, he was ordered and directed by appellant's foreman to cut the coal in room 11, which was dangerous and unsafe, and was known to be so by appellant's foreman at the time he ordered appellee to cut the coal therein, assuring him that said room was "all right;" that said room was not a reasonably safe place in which to work, but was a dangerous and unsafe place, a fact well known to the appellant, or, by the exercise of ordinary care, could have been known to it and its foreman; that said dangerous and unsafe condition was unknown to the appellee, and could not have been discovered by him in the exercise of ordinary care and reasonable diligence, on account of his youth and inexperience; and that, in obeying said order, and in relying upon said assurance that the room was all right and safe, he met with the accident which caused his injuries.

Appellant's chief complaint is, that the circuit court erred in failing to peremptorily instruct the jury to find for the defendant, and that the instructions given were erroneous.

The facts as shown by the weight of the evidence are substantially as follows:

Garrard had been working in appellant's mine about 6 or 8 months, running a motor car in hauling coal from the place in appellant's mine, where it had been dug, to the tipple, as his regular work. He was without experience as a miner, and had little experience in the operation of mining machines. He had operated a mining machine only five or six shifts, all told. He was injured about 7 o'clock in the morning, after he had worked all night. He had finished his shift of ten hours, and had started to leave the mine, when, as he says, Hamilton, appellant's night boss, or foreman, directed him to go into room 11 on Ammon's entry, and cut coal in that room with a mining machine run by electricity.

Garrard protested, and insisted that Gilbert was the regular machine man, and that he ought to run it; but he was overruled in this by Hamilton, who directed Garrard to go and do the work, showing him where to cut.

Room 11 had been cleaned up and made ready for the work by Keywood; and when Garrard went into the room and set his machine to begin cutting, he found a piece of slate sticking out about 18 inches from over the rock. He set the machine and began cutting under the coal; and, after he had cut about six feet, a rope attached to the back of the machine got hung in some way, and when Garrard bent over to loosen it, the slate fell and knocked him off of the machine, causing the injuries complained of.

It is contended by appellant, and it attempted to show by the proof, that the fall of the slate was caused by the saw of the machine being caught under the pressure of the coal, thereby dislodging the slate above it. But the proof does not sustain this contention, since it appears that the machine continued to run for some time after the accident, and until it was stopped by one of the other men.

Appellant further insists that this is a case where the master is not responsible for an injury sustained by the servant because the danger was caused by the progress of the servant's work; and, that the company did not, therefore, fail to furnish the appellee a safe place in which to work. In support of this contention, appellant relies upon Smith v. North Jellico Coal Company, 131 Ky., 196; American Milling Co. v. Bell, 146 Ky., 68; Proctor Coal Co. v. Beaver's Admr., 151 Ky., 846; Wallsend Coal & Coke Co. v. Shield's Admr., 159 Ky., 644, and other cases belonging to that class.

Appellant also contends that Williamson's Admr. v. Blue Grass Fluor Spar Co., 156 Ky., 226, is on all-fours with the case at bar, and is decisively against the appellee's right to recover.

In that case Williamson was assisting in cutting an underground passageway through clay; and while timbering up this passageway he was killed by the clay falling upon him. A peremptory instruction was given for the company upon the ground that the evidence showed nothing in the external appearance of things to indicate danger of the walls slipping, and that the fall

of the clay was an accident against which ordinary care could not have guarded.

But we cannot agree with appellant that the Williamson case is not to be distinguished, in principle, from the case at bar; for here Garrard, by reason of his youth and inexperience as a coal miner, wholly failed to appreciate the danger from the slate which he found sticking out over the coal. This danger could readily have been discovered and averted by a proper and timely inspection by the appellant. Garrard could not put a prop under it, because a prop would be in the way of the machine, and would have prevented all work. The condition of the roof was easily discoverable upon inspection, and should have been removed before appellee was sent into the room to work.

Appellant insists that Hamilton, its foreman, did not give Garrard any assurance that the room was "all right" or safe; and it does not appear that Hamilton used those precise words when he ordered Garrard to work in room No. 11.

But it is not necessary that the master should use words which, in terms, expressly or directly assure the servant that the place where he is directed to work is a reasonably safe place; it is sufficient if the acts of the master, under all the circumstances, amount to an assurance that the place where he directs the servant to work, is a reasonably safe place.

In the case at bar Hamilton, the foreman, not only denies that he gave any such assurance, but he also denies that he directed Garrard to go to work in room No. 11, although he admits having talked with Garrard at the time he went to work. In this, however, he is contradicted by Garrard and two other witnesses, and the circumstances of the case. This, however, was a matter for the jury to determine under the conflicting testimony; and if Garrard told the truth, and of this the jury had the right to judge, it is difficult to avoid the conclusion that Hamilton assured Garrard that the room was a reasonably safe place in which to work. At any rate, there was sufficient evidence to take that question to the jury.

In Ashland Coal & Iron Co. v. Wallace, 101 Ky., 626, 640, it was said:

"Defects in the roof of a mine which might be perfectly apparent to the eye of a competent inspector might have no significance to a laborer or an employe who had had no experience in this special employment; and it would be unreasonable to charge him with contributory negligence simply because he sees defects, unless a reasonably intelligent and prudent man would, under like circumstances, have known or apprehended the risks which those defects indicated. The dangers, and not the defects alone, must be so obvious that a reasonably prudent man would have avoided them in order to charge the servant with contributory negligence. (Kane v. Ry. Co., 128 U. S., 94, 9 Supreme Court Rep., 16; R. R. Co. v. McDade, 135 U. S., 570, 573.)"'

Again, in McFarland's Admr. v. Harbison & Walker Co., 26 Ky. L. R., 747, 82 S. W., 430, this court said:

"The rule has been often announced by this court that it is the duty of the master to furnish his employe a reasonably safe place in which to work, and that the servant has the right to presume, when directed to work in a particular place, that the master has performed this duty and could proceed with his work relying upon this presumption, and that it is not the duty of the servant to discover defects, and unless he knows of their existence, or they are patent and obvious to a person of his experience and understanding, he would not be precluded from a recovery."

This case, in its controlling facts, is quite like the case of Ada Coal Co. v. Linville, 152 Ky., 2, where Linville was injured by slate falling from the roof of a mine in which he was working. The proof showed that the slate would not have fallen if the coal had not been removed, and that Linville removed the coal in the course of his work.

In that case this court said:

"It is insisted for the coal company that the rule is that the master is not responsible for a danger which the servant creates in the progress of the work, and that, as this slate would not have fallen if the coal had not been removed from beneath it by Linville and Jackson, the company is not liable. We have recognized the principle referred to in several cases. (See Smith's Admr. v. North Jellico Coal Co., 131 Ky., 196; East Jellico Coal Co. v. Golden, 79 S. W., 291.) But it has no application to the facts of this case. The car had

been set there for the men to load as they got the coal down. The rail on which the car stood was only eighteen inches from the pillar. It was impractical to put up a prop between the car and the pillar before getting out the coal. Kinder had put the men at the work and told them to go ahead getting out the coal. There was no suggestion that they should put up a prop or do anything to make the place safe. They were doing simply what he told them to do and in the way he told them to do it. It is not a case where the servant creates a danger in the progress of his work, but a case where the danger existed at the time the master directed the work to be done and was incidental to the work so directed. We, therefore, conclude that the court properly refused to instruct the jury peremptorily to find for the defendant.''

This case, like the Linville case, is not one where the servant created a danger in the progress of his work, but a case where the danger existed at the time the master directed the work to be done, and was incidental to the work so directed. While the condition of the roof was apparent to Garrard, it is evident that he did not, by reason of his inexperience, appreciate the danger.

The motion for a peremptory instruction was properly overruled.

Next, it is insisted that the first and second instructions given are erroneous, and that the court failed to instruct the jury upon the subjects of contributory negligence and assumed risk.

While the instructions are somewhat prolix, they substantially gave the law of the case.

The first instruction told the jury that it was appellant's duty to exercise ordinary care to furnish Garrard a reasonably safe place in which to do his work in said mine, and if they believed from the evidence that room 11 was dangerous and unsafe, and that fact was known to the defendant, or, by the exercise of ordinary care, could have been known by it, but was not known to Garrard, and that Garrard, while exercising ordinary care for his own safety and protection, was injured by the falling of the slate, the law was for the plaintiff, and the jury should so find; and that unless the jury so believed, they should find for the defendant.

The second instruction advised the jury that if they believed from the evidence room No. 11 was dangerous and unsafe, and that fact was known to the defendant, or, by the exercise of ordinary care, could have been known to it, before Garrard was injured, and that Garrard was directed by the foreman to work in said room, and was assured that said place was reasonably safe, and that Garrard relied upon said assurance, and while following said direction in said place he was injured by a fall of rock or slate from the roof, the law was for the plaintiff, unless they should further believe from the evidence that the dangerous and unsafe condition of room No. 11 was so open, obvious or apparent that a reasonably prudent person of the age and experience of Garrard would have apprehended the danger and withdrawn from said working place before his injury, in which event the jury should find for the defendant.

The fourth instruction properly gave the measure of damages; while the fifth instruction put upon Garrard the duty of exercising ordinary care for his own safety and protection, "and to inspect and examine his working place to discover whether it was reasonably safe, and if he failed to do this, and by reason of such failure he was injured, then the law is for the defendant, and you will so find."

By the sixth instruction the jury were told that, although they might believe from the evidence that at the time Garrard was assigned to work at said place, and began to cut the coal in the room, the said place was in a reasonably safe condition, and that the undermining of the coal by Garrard loosened and caused the rock or slate to fall and injure Garrard, the law was for the defendant; but if they believed from the evidence that Garrard was assured by Hamilton, the foreman in charge of the work, that the said place was reasonably safe, and directed the plaintiff to continue said work until completed, they should find for the plaintiff under the second instruction.

The seventh instruction properly defined ordinary care and negligence; while the eighth was the usual instruction authorizing a verdict by nine of the jury.

We do not see any substantial error in these instructions as applied to the facts of this case.

Taking them as a whole, they fairly presented the respective rights and duties of the parties; and, as there was sufficient evidence to carry the case to the jury upon the issues thus submitted, it is not our province to interfere with their finding.

Judgment affirmed.