## Atlas Stone Company v. Ingram.

(Decided December 16, 1921.)

Appeal from Carter Circuit Court.

1.  Master and Servant—Safe Place to Work.—An employe in a rock quarry who is injured while engaged in such work as necessarily

makes the place unsafe cannot rely upon the master's obligation to furnish him a safe place to work.

2. Master and Servant—Assumption of Risk.—An employe of a rock quarry who is engaged in the loading of cars from a pile of lose stone by shoveling the same into the cars from the base or foundation of the pile, is engaged in such work as necessarily makes unsafe his place of work, and he therefore assumes the risk incident to the undermining of the pile of loose stone.

3. Master and Servant—Safe Place to Work.—If one engaged in quarrying stone puts in a shot at a point on the cliff above the quarry where his employes are required to work, and negligently leaves hanging in the cliff loose rock resulting from the shot, the duty devolves upon him to remove such loose stone before directing his employes to work in the quarry under it.

H. L. WOODS for appellant.

G. W. E. WOLFORD and BEN F. THOMPSON for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

Appellee filed this action for damages against appellant alleging that while he was employed by it in its stone quarry in Carter county and engaged in loading stone at a point in that quarry where the agents of the company had directed him to work and where they had assured him it was safe for him to work, a large mass of stone, earth and other substances fell in, on and over him whereby he he was injured, and alleging his said injuries were caused by the negligence of the defendant and its officers and agents.

The answer was a traverse, and in a separate paragraph defendant relied upon the contributory negligence of the plaintiff.

On a trial a verdict was returned for the plaintiff upon which judgment was entered, and the defendant's motion for a new trial having been overruled it has appealed.

The evidence disclosed that the defendant operated rather an extensive rock quarry and a crusher in connection with it; that there was run from the crusher to the quarry a small railroad track upon which was run a small engine and cars with which to carry rock from the quarry to the crusher.

At the end of this line next to the quarry the railroad track was so arranged that it might be moved short distances so as to place the cars nearer to the mass of stone

intended to be loaded in them and thereby facilitate the loading; the cars were placed on this track as near as may be to the mass of loose stone and two loaders were assigned to each car, one at each end thereof, and when the loose stone nearest to the cars was loaded and removed, in some way which is not quite clear from the evidence, the track was then moved over nearer to the remaining part of the stone so as to facilitate the loading as above indicated. It will be seen from this statement that it was necessary for those loading the stone into the cars to be placed between the cars and the pile of loose stone, and it was while appellee was so acting as loader that he received the injuries of which he complains.

It is further shown in evidence that at times a shot is put in at some point on the cliff, or in the quarry, which blows out and breaks up the rock, and then what are known as "punchers" go along and prize out the loose stone that may be left hanging after the shot, but this is not done while the men are at work below in the quarry.

The evidence further shows that while appellee was so engaged in loading, a stone about as large as a water bucket rolled or fell down against him and inflicted the injuries of which he complains; but the evidence as to where this stone came from is very uncertain and vague. Some of the witnesses say it came from the cliff—thereby meaning, as we assume, from above the mass of loose stone that was being loaded into the cars—while others say that it started above where the loaders were at work, and indicate by their evidence that it was a part of the pile of loose stone which they were loading into the cars from the floor of the quarry. The evidence further shows that the manner of loading the cars was that the loaders would shovel out the rock from the base or foundation of the pile of loose stone and throw it into the cars, and it is apparent that in so taking the stone from the base of the pile, as it was removed it would loosen the stone higher up on the pile and cause it to slip and have a tendency to roll down.

The court in its instructions based the right of the plaintiff to recover upon the duty of the defendant to furnish him a safe place in which to work, but nowhere required the jury to believe before it might find for the plaintiff that the rock or stone which struck him should have come from the cliff and not from the pile of loose stone in which he was working. It is the view of appellant, and it offered an instruction covering that view, that

if the stone which struck appellee was a part of the pile of loose stone in which he was working, and he at the time of his injury was engaged in changing the place where he was injured, and it was continually changing as the work progressed by reason of his work and that of his fellow employes, if the stone which struck him came down from the pile of loose stone which they were at the time undermining by their work, the duty of appellant to furnish him a safe place in which to work did not apply, and it relies upon that class of cases wherein it has been held that in certain classes of work where the servant is engaged in such work as to necessarily make the place unsafe the master is relieved of the duty of furnishing a reasonably safe place in which to work. Hassett & Company v. Richardson, 169 Ky. 342; Musick's Administrator v. Northeast Coal Company, 161 Ky. 393; Smith v. North Jellico Coal Company, 131 Ky. 196; Wright v. Cumberland Telephone Company, 137 Ky. 303; Williams Coal Company v. Cooper, 138 Ky. 295; Proctor Coal Company v. Beaver, 151 Ky. 839; Wallsend Coal Company v. Shields, 159 Ky. 644; Evans Chemical Works v. Balls, 159 Ky. 399.

It is reasonably clear from the evidence that the manner of removing the loose rock from the quarry and the undermining of the base of that pile of loose rock by shoveling it therefrom into the cars, would unmistakably have a tendency to loosen the stone higher up on the pile and thereby cause it to slip and fall, and if the rock which struck appellee and injured him was a part of the pile of loose stone and was caused to fall by the nature of the work which appellee and his fellow employes were engaged in and the dangerous condition was being brought about by the very work which they were doing, he assumed the risk incident to that work because of its nature, and the duty of the master to furnish a safe place to work did not rest upon it; for the law does not require impossible or even unreasonable things of men, and the work being in its very nature dangerous because the manner in which it was being done necessarily made the place unsafe, the master cannot be held to the duty of furnishing a safe place.

Manifestly, however, if the rock which struck appellee fell from the cliff above the pile of loose stone and had been negligently left hanging loose in the cliff where it was a menace to the men working under it, appellant was remiss in its duty in not having it removed, and thereby

furnish, insofar as it could, a safe place for its employes to work.

The whole question in the case seems to be whether the rock which injured the appellee came from the cliff or rolled down from the mass of loose stone. And on a retrial the court will, in its instructions, submit this issue and authorize a recovery for the plaintiff only in the event that the stone came from the cliff.

The appeal is granted and the judgment reversed with directions to grant appellant a new trial and for further proceedings consistent herewith.