## Parsley, et al. v. Horn.

(Decided November 21, 1922.)

### Appeal from Martin Circuit Court.

1. Master and Servant—Assumption of Risk.—The master is not responsible for injuries from a danger which the employe himself creates in the progress of the work.

2. Appeal and Error—Master and Servant—Safe Place to Work—Assurance of Safety—Instructions.—Where the work in which the employe was engaged was that of shooting down coal and removing the support from beneath the slate, it was error in an action for personal injury to authorize a recovery if the employer failed to use ordinary care to furnish him a safe place to work or assured him that the place was safe.

3. Master and Servant—Risk of Service Outside of Ordinary Employment—Duty of Master to Instruct Inexperienced Servant.—When a servant is ordered by one having authority over him to do a temporary work beyond the work which he had engaged to do, and the superior knows, or ought to know, from all the circumstances of the case, that the work which the subordinate is directed to do is of a peculiarly dangerous character, and is aware, or under all the circumstances should be aware, that the risks and hazards of the work, or the proper mode of doing the work to avoid the incident risks, are not obvious or known and appreciated by the subordinate, by reason of his youth, incapacity or inexperience, it is the duty of the superior to caution and

instruct such disqualified servant sufficiently to enable him to un-
derstand the dangers he will encounter and how to do the work
with safety if he exercises due care himself.

4. Master and Servant—Failure to Warn Inexperienced Servant—
Question for Jury.—In a servant's action for personal injuries,
evidence held sufficient to take the case to the jury on the ques-
tion of the master's negligence in failing to warn him of the
danger.

W. R. McCOY for appellants.

J. B. CLARK and KIRK & KIRK for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

In a suit against U. G. Parsley and Albert Parsley
for personal injuries, plaintiff, Henry Horn, recovered
a verdict and judgment for $1,000.00. The defendants
appeal.

The facts are these: During the years 1916 and 1917,
U. G. Parsley was carrying on a timber job on Rock-
castle creek, and Albert Parsley was the foreman in
charge. The night before the accident there was a
heavy snow, and the next morning it was too cold to take
the teams out. The men engaged in the timber work oc-
cupied a boarding house managed by U. G. Parsley.
There being but little coal on hand, it was suggested
that the men put in the day digging coal from a coal bank
which was only about fourteen feet wide and six or seven
feet in depth. Horn and Sexton went to the home of Al-
bert Parsley, the foreman, to get the materials with
which to dig the coal, and then left for the coal bank.
According to Horn's evidence, the foreman told him
that it was a good, safe place to work and there wasn't a
bit of danger in it. When they reached the coal bank,
they found ice and snow all along the face of the coal,
and could not tell much about it. They fired several shots
before noon and two shots after noon. When they went
in to bring out the balance of the coal, the foreman was
present and said, "Boys, you have a right smart bunch
of coal there, and when you get down what loose coal
you have shot down you can quit." There were no
props or timber of any kind in the bank. When the
foreman was there, he could see the condition of the
roof, but said nothing about its being dangerous. Plain-
tiff had never had any experience in coal mining, and
knew nothing of the danger. He went into the mine be-
cause he was ordered to do so. There was a large piece

of slate which stuck back from the face of the coal about four feet. It fell and severely injured him. Along about the last time they were getting out the coal, they pounded on the slate. He saw the slate when they first went in there to dig. They did not try to remove it because there was such a big block of it. He had been in country banks where there was slate. They did not make any special examination to see what effect the shots had had. The roof looked safe, they thought, and they did not pay much attention to it. They did not see anything that looked dangerous, only it looked like a pretty bad place for a fellow to dig coal. Bascomb Horn, who was present when the question of digging coal came up, testified that Parsley said it was a good place to dig. George Horn, a cousin of Henry Horn, said he was present when the digging of the coal was suggested and he thought Parsley said that it was a good, safe place in which to work.

For the defendants U. G. Parsley testified that Albert Parsley, his brother, was superintending and overseeing the timber work. Albert Parsley, the foreman, testified that on the occasion in question he asked if somebody would dig some coal and Joe Sexton and Henry Horn volunteered. He never at any time ordered or directed Henry Horn to go down there and dig the coal. He was in the bank just a short time before Henry Horn was injured. When he got there Henry Horn was trying to pull a piece of slate down with a big pick. John Damron told him it was dangerous, and witness also told him it was dangerous. When witness first observed the slate, it had been pulled loose from the rock. He told Horn it was unsafe and to get out from under it. He never at any time told Henry Horn it was a safe place to work. John Damron testified that he was present at the coal bank before Henry Horn was injured. When he arrived there, Albert Parsley, Henry Horn and Joe Sexton were there. While there, he saw Henry crawl under a piece of slate and go to picking. He told Henry it was dangerous, but Henry said that he had just pulled at it with a dirt pick and it was solid. At the same time, Parsley told Henry he had better get out of there. When they went there, it was perfectly safe, but after they had mined the coal from under the slate, it was dangerous. Joe Sexton testified that they fired a number of shots to shoot down the coal. After they took the coal out from under the slate, it fell. Parsley was

down there, but he did not remember what he said to Horn. Horn took a pick and tried to pull the slate down that afterwards fell on him.

In rebuttal Henry Horn testified that there were no posts set up in the mine, and that neither John Damron nor Parsley told him that the place was dangerous, and that he had better get out.

Appellants first insist that the court erred in not sustaining their motion for a peremptory instruction. The basis of this contention is that the master is not liable for a danger which the servant himself creates in the progress of the work. As the work of taking out the coal made it necessary to shoot the coal down and thus remove the support from beneath the slate, there can be no doubt that the place was made unsafe during the progress of the work in which appellee was engaged, and the safe place doctrine does not apply. American Milling Co. v. Bell, 146 Ky. 68, 141 S. W. 1191; Wallsend Coal & Coke Co. v. Shields' Admr., 159 Ky. 644, 167 S. W. 918. It was therefore error to authorize a recovery either for the failure to furnish appellee a safe place to work, or for the general assurance that the place was safe. Because these grounds were insufficient, however, it does not follow that appellee was not entitled to recover on some other ground. The case is one where appellee was assigned to temporary work which was more dangerous than his regular employment. The law applicable to such a case is well stated by Judge Lurton in Felton v. Girardy, 104 Fed. 127.

"But when a servant is ordered by one having authority over him to do a temporary work beyond the work which he had engaged to do, and the superior knows, or ought to know, from all the circumstances of the case, that the work which the subordinate is directed to do is of a peculiarly dangerous character, and is aware, or under all the circumstances should be aware, that the risks and hazards of the work, or the proper mode of doing the work to avoid the incident risks, are not obvious or known and appreciated by the subordinate, by reason of his youth, incapacity, or inexperience, it is the duty of the superior to caution and instruct such disqualified servant sufficiently to enable him to understand the dangers he will encounter, and how to do the work with safety if he exercises due care himself. Leary v. Railroad Co., 139 Mass. 580, 2 N. E. 115; Cole v. Railway Co., 71 Wis. 114, 37 N. W. 84."

. ' Appellee says that he had had. no previous experience in coal mining and did not know and appreciate. the probable danger from the falling slate, and we are not prepared to say, as a matter of law, that the danger was.so obvious that an ordinarily prudent person of appellee's experience would have known and .appreciated it. That being true, the evidence was sufficient to take the case to the jury on the question of appellants' failure to warn appellee, and there was no error in overruling the motion for a peremptory instruction.

Judgment reversed and cause remanded for a new trial consistent with this opinion.