## Helton v. Gunn Coal Mining Co.

(Decided Feb. 26, 1935.)

GOLDEN, LAY & GOLDEN for appellant.

W. T. DAVIS for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

This is an action to recover damages for an injury sustained by William McKinley Helton, an employee of the Gunn Coal Mining Company, while engaged in removing a pillar in its mine.

The Gunn Coal Mining Company operated a mine in Bell county, Ky. It was eligible to operate, but was not operating, under the Workmen's Compensation Act, section 4880 et seq., Ky. Stats. Helton, at the time of his injury, was not protected by it.

The basis of Helton's action is the negligence of the company. In his petition, as amended, he sets forth the specific acts of negligence which he alleges as the basis of his recovery.

The Gunn Coal Mining Company, having elected not to operate, and not operating, under the Workmen's Compensation Act, the provisions of section 4960 preclude it from relying on contributory negligence, assumed risk on the part of Helton and the negligence of a fellow servant. High Splint Coal Co. v. Baker, 247 Ky. 426, 57 S. W. (2d) 60, and cases cited. Though it was, and is, precluded from relying on these defenses, the burden was on Helton to allege and prove at least a prima facie case of negligence to entitle him to have the issues submitted to the jury. The allegations of his original and amended petition in this respect are: The company "with gross negligence and carelessness failed and refused to exercise ordinary care to furnish him a reasonably safe place to work, or reasonably sufficient mine props, timbers, caps, tools, tracks, cars and equipment, or reasonably safe help or assistance to perform his work"; he "was ordered to work and clean up slate and rock under a dangerous overhanging of rock and slate in the mine and slate sticking out from the side of the mine at the place in which he was working"; "the mine was taking weight and dangerous; slate and rock were falling from the top and also slate and rock falling on the side roll"; and "it was negligent in placing him in this unsafe place to work and ordering him to perform such duties thereto or securely prop same, and in assuring the plaintiff that said places to work were safe"; it "knew all of the said conditions and said negligence, or could have known of same by ordinary care; that the defendant did not know of same, and could not have known of same, by ordinary care." It is distinctly alleged that he was ordered by the company to work where he was injured.

These allegations were traversed, followed by a plea of contributory negligence. However, the allegations of the petition setting forth the nonacceptance by the coal company of the Workmen's Compensation Act are not denied in its answer.

At the conclusion of the evidence of both parties, the court directed a verdict for the Gunn Coal Mining

Company. Of this action of the court, Helton is here complaining, insisting the evidence authorized the submission of the ·case to the jury. The coal company insists contrariwise.

The evidence discloses Helton was thirty-three years old at the time he sustained the injury for which he sues. His injury was a broken back from which he suffered physical and mental pain, destroying totally and permanently his power to earn money.

Helton and Robert Margraves were companions in their labor in the mine. Helton had engaged in "room work" in and around mines for ten years next before commencement of the work in the mine in which he was injured. For about twelve and a half days next before he was injured, he and Margraves worked in the same entry where the accident happened, about 150 feet from the point at which he was injured. A large piece of slate fell near where they were working; thereupon, they went to the mine foreman and informed him of the condition of that place, when he stated to them: "Alright, I will put you in a safe place where you can work"; he went with them to the pillar at which they were working at the time he sustained his injury and there said to them: "Here is a place, do the best you can with it." "Go ahead and push this stump up, that is the way I want it worked." Helton testified the foreman "said it was a safe place"; "he showed us where to begin." At that time and place slate had fallen from the roof of the mine onto the floor. Helton and Margraves cleaned up the slate overhead and on the floor. In doing so, they removed the slate off of the top of the coal "further back in the mountain." So that at the time Helton was injured the slate was "about straight up and down with the coal." They loaded two cars with coal that had been "already dug." At the time they began their labor at the pillar at which they were at work as directed by the foreman, the bottom of the mine "was heaved" in "several places"; this was caused by the weight of the overlying mountain. The mine had "a soft bottom and a hard top." This caused "the heaving of the bottom and the falling of the top." When the noon hour arrived, Helton and Margraves retired from their place of work to eat their lunch; on finishing it, they returned to their place of work to resume their labor.

Just as Margrave was in the act of "picking up his pick," Helton sat down close against the face of the pillar, preparing to begin digging coal, and at that moment a large quantity of slate, to use Margraves' expression, "jumped out" or rolled from above the coal onto Helton, causing his injury and knocking down Margraves. Neither Helton nor Margraves were doing anything at that time "to pull it down on him." The slate which injured Helton came "from the side" above the coal, and not from immediately over Helton, or above the space from which they had removed the slate in the forenoon and loaded the cars of coal. At the time the foreman placed them at the pillar to begin work, he directed them to remove the slate which they removed, with the informaton "they would be paid extra" for removing it. At the time they returned to the place of their work, on finishing their lunch, Margraves with a pick sounded the slate immediately over the space where they intended to begin their work. It sounded solid. Before doing so, he remarked to Helton "they had better see if they could get any more of the slate down." Helton responded he thought "there was no danger in it." In sounding the overhead slate, he did so at about the middle. The coal in the pillar was about 3½ feet thick; the slate over it was about 2 or 2½ feet. They had taken neither slate nor coal from under that which came from above the coal and fell upon Helton. Experienced miners testified that the rolling of the slate from out of its place, which fell upon Helton, was caused by "squeezing"; that is, the settling of the overlying mountain; and that this and the presence of the "heaves" along the side of the mine from which coal had been removed indicated "squeezing."

The facts as stated in this resume are not controverted.

The coal company argues "the accident occurred on an entry, but it was not the duty of the master in this case to provide a safe place for a servant"; "there was no assurance of safety"; the "work was not directed to be done by an improper method"; "nor mined in a haphazarded or improper method to cause weight." Helton "was engaged in making a dangerous place safe and in changing conditions as the work progressed."

Helton argues "if there was any negligence shown on the part of the coal company, and if this negligence was causally connected with the injury" of Helton, "the case was made out for the jury"; and "where there is an assurance of safety on the part of the master to the servant, the servant has a right to work in obedience to this assurance under the directions of the master, and if an accident occurs and he is injured, the master is liable, unless the danger is so obvious that a reasonably prudent person would not undertake it." "In obeying the directions and commands of the foreman, Helton had the right to rely upon his superior judgment and assume the latter would not subject him to unnecessary peril"; that "the directions of the foreman to Helton to work in an unsafe place, is a violation of section 2726-4, Kentucky Statutes."

Their contentions comprehend their respective theory of the developed facts as well as that of the applicable and controlling law of the case. They agree in their briefs that "if Helton at the time he was injured was engaged in work for the employer, wherein he was making a dangerous place safe, then the safe place to work doctrine does not apply to him. Or if he, at the time he was injured was constantly creating a danger, then the safe place to work doctrine does not apply."

It must be noted that Helton and his co-laborer were assigned to a double task; one to clean up the slate in front of the pillar from which they were later to remove the coal, and the other to push the pillar; that is, after the cleaning up the slate was completed, to begin to remove coal from the pillar by driving an entry through it, which was to be an opening about 7 or 8 feet wide, and larger as it was gradually pushed to the opposite side of the pillar. It must be kept in mind that Helton was not injured during the performance of the first obligation; nor was he injured by the falling of slate from the overhead immediately above the space from which the slate was removed. That job was completed; he sustained no injury while engaged therein, and he was in the act of beginning the second task assigned him by the foreman, at the time he was injured.

The evidence discloses that Helton and his fellow workman previous to his injury were engaged in their

labors at a place in the mine, which, they conceived, endangered their lives. They went to the foreman and imparted this information to him. He made the statement to them set out above. In considering his statement to them, it is indispensably essential that his language be viewed in connection with their statement to him and also in connection with his acts occurring at the time of, and immediately following, his and their statement. When so considered, it is not doubtful that his statement was the equivalent of a direction where to work as well as a positive assurance that after the slate in front of the pillar was cleaned up, the pillar was a safe place for their labor. See Carter Coal Co. v. Filipeck, 180 Ky. 94, 201 S. W. 468. Helton had the right to rely upon his superior knowledge and judgment of the safety of the work of pushing the pillar, it not being so manifestly dangerous that a person of ordinary prudence would not undertake it.

It is a familiar rule that where a servant relying upon the superior knowledge and assurance of his superior in performing an act whereby he is exposed to unusual danger, and sustains an injury from it, the master is liable unless the result of the act was realized by the servant, or was so apparent that no man of ordinary prudence situated as he was would have undertaken it. Pittsburg, C., C. & St. L. R. Co. v. Schaub, 136 Ky. 652, 124 S. W. 885, 136 Am. St. Rep. 273; Flahiff v. Louisville & N. R. Co., 9 Ky. Law Rep. 398; Ada Coal Co. v. Linville, 152 Ky. 2, 153 S. W. 21; Bracken v. Lam Coal Co., 158 Ky. 481, 165 S. W. 686. It was the duty of the foreman to know that the place at which he directed Helton to the work of pushing the pillar was reasonably safe for the purpose, unless the unsafe condition was so recent, by the exercise of ordinary care, the coal company could not have learned of it in time to have prevented Helton's injury, and Helton was bound to avoid the danger of which he knew, or which in the course of his work, he could not have failed to know, except by his own negligence. Kentucky Freestone Co. v. McGee, 118 Ky. 306, 80 S. W. 1113, 25 Ky. Law Rep. 2211; Coral Ridge Clay Products Co. v. Collins, 181 Ky. 818, 205 S. W. 958; Stratton v. Northeast Coal Co., 164 Ky. 299, 175 S. W. 332; Parsley v. Horn, 196 Ky. 556, 245 S. W. 140. Accordingly, if the Gunn Coal Mining Company, or its foreman acting in its stead, knew, or by the

exercise of ordinary diligence could have known, the slate above the coal in the pillar, by reason of the "squeezing" of the mine, was dangerous, or in a dangerous condition, and its foreman put Helton to work thereat, it is liable for the injury sustained by reason of such danger, since the Workmen's Compensation Act deprives it of the right to rely upon the defenses of contributory negligence and assumed risk. Interstate Coal Co. v. Garrard, by et al., 163 Ky. 235, 173 S. W. 767; Duvin Coal Co. v. Fike, 238 Ky 376, 38 S. W. (2d) 201. It is an accepted rule that if there is any evidence of negligence on the part of the master and of its causal connection with the plaintiff's injury, a case is made for the jury. West Ky. Coal Co. v. Shoulders' Adm'r, 234 Ky. 427, 28 S. W. (2d) 479; Gatliff Coal Co. v. Sumner, 196 Ky. 592, 245 S. W. 144; Duvin Coal Co. v. Fike, supra.

The proven facts herein distinguish it from those where a danger which encompasses the servant and which was created by him in the necessary progress of the work in which he was engaged at the time of his injury, then the safe place doctrine has no application. For the latter line of cases, see Boyd v. Crescent Coal Co. v. Beaver's Adm'r, 151 Ky. 839, 152 S. W. 965; Smith's Adm'r v. North Jellico Coal Co., 131 Ky. 196, 114 S. W. 785, 28 L. R. A. (N. S.) 1266; Wallsend C. & C. Co. v. Shields' Adm'r, 159 Ky. 644, 167 S. W. 918; Saxton Coal Co. v. Kreutzer's Adm'x, 202 Ky. 387, 259 S. W. 1022; North East Coal Co. v. Setzer, 169 Ky. 245, 183 S. W. 553; High Splint Coal Co. v. Baker, supra.

It is true Helton offered no proof to sustain the allegations of the petition relating to "mine props," "timbers," "caps," "tools," "tracks," "cars," "equipment," "help," or "assistants." But under the general recognized rule that a plaintiff is entitled to a submission of his case to the jury, if there is any evidence, though slight, to sustain his claim, he was entitled to have the case submitted to the jury on the other issue made by the pleadings, notwithstanding the absence of evidence concerning "mine props," etc. Stanley's Adm'r v. Duvin Coal Co., 237 Ky. 813, 36 S. W. (2d) 630; Cecil v. Oertel Co., 239 Ky. 825, 40 S. W. (2d) 328; Iseman v. Hayes, 242 Ky. 302, 46 S. W. (2d) 110, 85 A. L. R. 996; Globe Indemnity Co. v. Daviess, 243 Ky. 356, 47 S. W. (2d) 990, Massachusetts Bonding & Ins.

Co. v. Dale, 244 Ky. 50, 50 S. W. (2d) 40; Duff v. May, 245 Ky. 709, 54 S. W. (2d) 4.

The verbal testimony in behalf of Helton and the proven circumstances, establishing the ''squeezing'' of the mine, made a case for the jury, the probative force of the evidence thereof was for its determination. The court erroneously determined as a matter of law there was no evidence of negligence of the coal company, constituting the proximate cause of his injury, and in peremptorily instructing the jury.

The coal company complains of the form of the hypothetical questions propounded to the experienced miners, introduced by Helton as experts. The questions propounded to them are subject to the objection they did not contain the facts which had been proven, and upon which their opinions were based.

''It is an accepted rule that such questions propounded to experts must be based upon and relate to the facts proved in the case. K. T. & T. Co. v. Humphrey, 168 Ky. 611, 182 S. W. 854; Wigginton v. Wigginton's Ex'r, 205 Ky. 613, 266 S. W. 245. Such questions calling for the witness' conclusions, instead of giving opinions as to the effect of the matter submitted to them in the hypothetical question, is improper and constitutes an error. Samuels v. Willis, 133 Ky. 459, 118 S. W. 339, 19 Ann. Cas. 188; A. L. I. Co. v. Bethel, 140 Ky. 609, 131 S. W. 523; Madison Coal Corp. v. Altmire, 215 Ky. 283, 284 S. W. 1068. Such questions which include facts of which there has been no proof are improper and subject to objection. C., N. O. & T. P. Ry. Co. v. Ross, 212 Ky. 619, 279 S. W. 1075; Coreene De Donato, Respt., v. Rolla Wells, 328 Mo. 448, 41 S. W. (2d) 184, 82 A. L. R. 1331.'' Stacy v. Williams, 253 Ky. 353, 69 S. W. (2d) 697, 707.

On another trial if one is had, the questions addressed to them should be required to be formulated to conform to these general rules.

Wherefore, the judgment is reversed for proceedings consistent with this opinion.