FREDERICK A. CARROLL vs. BOSTON COAL COMPANY.

Suffolk.     March 26, 1907. — May 15, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence*, Employer's liability.  *Evidence*, In rebuttal.  *Practice, Civil*, Conduct of trial.

In an action by the driver of a coal team against his employer for personal injuries from being struck by the top of the doorway of a coal shed of the defendant as the plaintiff was driving through it on the seat of a wagon about six feet and an inch above the ground, if it appears that the plaintiff had been employed by the defendant about sixteen months and was accustomed to drive through this doorway frequently, and the plaintiff testifies that he " could not go under there without ducking.  He always bent in case of anything happening anyway. . . . He never had tried to go through there sitting upright," and it also appears by the plaintiff's testimony that if a portion of an old chute projected below the line of the top of the doorway it was there when the plaintiff entered the defendant's employment, the plaintiff cannot recover, as his testimony shows that the accident was caused by his neglect to lower his head sufficiently in passing through the doorway under conditions with which he long had been familiar, an injury from the projection of the old chute, if such a projection existed, being one of the open and obvious risks of the plaintiff's contract of service.

The exclusion of evidence offered by a plaintiff in rebuttal, which he should have introduced at the beginning of the trial as a part of his case, is within the discretion of the presiding judge and is not subject to exception.

TORT by the driver of a coal team against his employer for injuries sustained at about six o'clock in the afternoon of January 23, 1904, at the defendant's wharf on Albany Street in Boston in the manner described in the opinion.  Writ dated April 6, 1904.

The declaration contained three counts, the first count being at common law, alleging that the defendant failed to provide the plaintiff with a safe place in which to do his work and neglected to warn him of the dangerous condition of a doorway through which he was driving when injured, and the second and third counts being under the employers' liability act.

At the trial in the Superior Court before *Holmes*, J. the plaintiff at the close of the evidence elected to proceed on his count at common law.  The judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

The evidence offered by the plaintiff in rebuttal and excluded by the judge, referred to in the last paragraph of the opinion, was as follows: One O'Brien, called by the plaintiff in rebuttal, testified that he had been a teamster and had been employed by the defendant, and remembered working there in the latter part of January or the first of February, 1904. The plaintiff offered to show by this witness that the board which contained the bolt, which the plaintiff contended caused his injury, was in existence there a few days later, and that this witness saw the board there, knew that the board was there as testified to by the plaintiff's witnesses. The judge ruled that it was a part of the plaintiff's case to show the existence of that board, and that the evidence should have been offered at some other stage of the case, but that at this stage (on rebuttal) he excluded it as a matter of discretion. To this ruling the plaintiff excepted.

The case was submitted on briefs.

*W. A. Buie & C. H. Morris,* for the plaintiff.

*N. Matthews, W. G. Thompson & R. Spring,* for the defendant.

KNOWLTON, C. J. The plaintiff was injured while driving the defendant's team on a coal wharf, in passing from the main driveway to one side into a coal shed to get a load of coal. He was sitting on the seat of a two-horse wagon which seat was about six feet and an inch above the ground. The height of the doorway through which he was passing into the shed was eight feet ten and one half inches, leaving two feet and nine inches between the top of his seat and the frame of the doorway. There was a dispute between the parties as to the condition of the doorway in other particulars; but if we take the testimony that was most favorable to the plaintiff, there was a piece of board or plank which was a part of the construction of a chute that formerly had been used there, and this piece, which was fastened above by a bolt swivel, was accustomed much of the time, according to the position in which it chanced to be, to hang so as to extend downward from half an inch to three inches below the top of the doorway. The plaintiff testified, as did also witnesses for the defendant, that " on the under side of the main beam there is a bolt fastened to the beam projecting about half an inch below the under side " of it. The defendant's witnesses

said that this piece of the old chute was not there at the time of the accident, and had not been there for a long time.

It is of little consequence to this case which part of the testimony is correct, for the plaintiff testified that he "could not say how long this piece had been there; it apparently was there from the time that they had used hard coal in the shed years ago. It was certainly there when he came there." He also testified that he "could not say exactly how high the door was. He could not go under there without ducking. He always bent in case of anything happening anyway. . . . He never had tried to go through there sitting upright." He had been employed by the defendant about sixteen months and was accustomed to drive through this doorway frequently. It appears from his own testimony that, if the portion of the old chute was there at the time of the accident, it was there when he entered the defendant's employment and constituted one of the open and obvious risks of the business in reference to which he made his contract for service. It has been held in a great many cases that an employer owes his servants no duty to change obvious conditions in the construction and arrangement of his place of business, which existed when the contract of employment was made. *Murch* v. *Thomas Wilson's Sons*, 168 Mass. 408. *Gleason* v. *Smith*, 172 Mass. 50. *Nealand* v. *Lynn & Boston Railroad*, 173 Mass. 42. The testimony of the plaintiff indicates that the accident was caused by his neglect to lower his head sufficiently in passing through the door, under conditions with which he had long been familiar.

There was no evidence that negligence of the defendant in regard to the ice caused the accident. By the great weight of the evidence, including that of the plaintiff himself, there was no ice there that could have affected the movement of the wagon in the slightest degree. If there was ice near the entrance to the shed, as was testified by a single witness, Cartwright, which as he said, "had been there for weeks," it could not be found that, with the work going on and heavy teams passing over the place many times a day, there was any such danger of its causing an accident of this kind as to warrant a finding that the defendant was negligent in failing to remove it. Nor was there any evidence that it caused the plaintiff's accident. The plaintiff

was familiar with the conditions there, and he knew the necessity of lowering his head to pass under the obstructions above the doorway, and he could see how much it was necessary to lower it. If he had used 'due care in that respect, the presence of a little ice underneath would not have caused the accident. With the unquestioned testimony in the case as to the constant use of the passageway and the doorway to the shed with teams, the jury would not have been warranted in finding that there was any considerable thickness of ice, even if there had been no testimony on that point but that of Cartwright alone. But when we consider the testimony of the plaintiff himself, and of all the other numerous witnesses, some of whom testified positively that there was no ice there, and none of whom testified to having seen any there at about that time, it is plain that the plaintiff was not entitled to recover on this ground.

It is not contended that the defendant was negligent in regard to the lights upon the wharf. It provided a good and sufficient system of lighting for the convenience of its employees. If there was failure to light the lamps promptly when darkness approached, it was the fault of the plaintiff's fellow servants.

The judge, in his discretion, rightly excluded the statements of O'Brien, a witness called by the plaintiff in rebuttal. His testimony should have been introduced in the beginning, as a part of the plaintiff's case.

*Exceptions overruled.*