## Fuson v. New Bell Jellico Coal Company.

(Decided October 2, 1913).

### Appeal from Bell Circuit Court.

1. Master and Servant—Action for Personal Injury—Negligence— Instructions.—In an action by a loader of a coal car for injuries sustained while returning a car into a room, the evidence showing that there was a defect in the track where the car jumped it, injuring the servant, and failing to show that he negligently contributed to his injury, the giving of a peremptory instruction to find for the defendant was error.

2. Master and Servant—Injury to Servant—Negligence—Submission to Jury.—Where there is some evidence to support the plaintiff's action for injury through negligence, the case should be submitted to the jury. Likewise the questions of assumed risk and contributory negligence are matters for the consideration of the jury, unless the facts proven leave no room for honest difference of opinion among intelligent men that the conduct of the party

injured under the circumstances was not that of an ordinarily prudent man. Held, the application of the facts of this case to this rule warranted its submission to the jury.

R. S. ROSE, JAS. M. GILBERT for appellant.

D. B. LOGAN, A. W. BABBAGE for appellee.

Opinion of the Court by Judge Nunn—Reversing.

Demps Fuson brings this action against the New Bell Jellico Coal Company to recover damages for an injury to his left hand sustained in June, 1911, while in the employ of the company.

Fuson's duty as an employee was to load coal into cars in a room off the first left entry, and to bring back empty cars from the main entry into the room. At the time of the injury he was bringing back an empty car. The distance from the main entry to the room, where he loaded coal, was about 85 or 90 feet, and was down grade, and fairly steep, as shown by the proof. The cars were let down into the room from the entry by gravity. The loader, in this case, Fuson, would sit upon the front end of the car, with his left hand upon the break beam, and the car being started would go to the face of the coal in the room of its own weight. The proof shows that this was the usual and customary method of taking the cars back to the room. The cars were of about two ton capacity, and when loaded were hauled back to the main entry by a mule. About sixty feet from the main entry, where the car was started on its return trip to the room, there was a sharp curve in the track, and at this point the car which Fuson was letting down into the room jumped the track and veered to the left, mashing Fuson's left hand, which held the break beam, against the rib or wall of coal, which stood within less than one foot from the side of the car when on the track. Fuson's hand was badly mashed and lacerated and some bones broken. He was incapacitated for four months, and swears that he is still unable to do his former amount of labor by one-half. Fuson testified and introduced two other witnesses, closing his case. The coal company demurred to the evidence and asked for a peremptory instruction, which the court granted.

Fuson appeals and complains of this action of the court, and the question here is whether there was any

evidence to sustain Fuson's claim that his injury was the result of the negligence of the company in failing to exercise ordinary care to provide a reasonably safe place, and reasonably safe appliances for his labor, and whether Fuson, as a matter of law, negligently contributed to his injury so that otherwise it would not have occurred, and whether, as a matter of law, the injury was the result of a risk which he assumed incident to his employment.

The evidence shows conclusively that there was a defect in the track. Both rails of the track were joined on the same tie which of itself has a tendency to make an angle in the track rather than a curve, and, in any event, according to the evidence the curve or angle was too sharp for safe operation.

It does not appear that an empty car had ever gotten off the track at this point, but during the month preceding the injury, at several different times, loaded cars had gotten off the track, and the day before, Fuson had complained, or made known to his superior officers this defect, and asked that it be remedied, and had their promise that as soon as their track repairing employees could complete some work on the outside of the mine they would be sent to remedy this defect. He swears that he relied upon this promise and continued at his work as they directed.

It is not clear from the proof whether, in view of the physical condition, it was practical to straighten the track or distribute the rail joints on different ties, but there is no doubt that the track at this point could have been rendered reasonably safe by the placing of an inner guard rail, and this could have been done in a few minutes with a relatively small expense.

Whether the company was negligent in permitting the track to remain in this unsafe condition, and for such a length of time, if it was unsafe, are questions for the jury, and for which a recovery would be permitted to stand, unless Fuson by his own negligence contributed to, and brought on the injury. That is also a question for the jury.

The company argues by inference that Fuson was bringing the car down the grade and over this sharp curve at an unusual and reckless rate of speed. There is no direct proof to show this state of facts, and Fuson denies it. Whether in fact Fuson was negligently bringing the car down in this way, or whether the brake on

the car was in that defective condition as to render it hard or impossible for him to control, are questions for the jury. It is argued by the company also that since Fuson complained to, and notified his superiors of this defective condition in the track, that he had knowledge of its danger, and in continuing at the work he assumed the risk. This is true if in fact he knew of the danger as well as the defect. He might know of the defect in the track without being conscious of any danger to him in operating a car over it, and unless the danger to him was such an open and obvious one that no man of ordinary prudence would have continued at work on it under the circumstances, the law will not impute to him an assumption of the risk before the track is repaired, if the injury occurs within the time when it could have been reasonably done.

The courts of this State in a long and unbroken line of opinions have held that where there is some evidence to support plaintiff's action for injury through negligence, the case should be submitted to the jury. And likewise the questions of contributory negligence, and assumed risk are matters for the jury's consideration, unless the facts proven leave no room for honest difference of opinion among intelligent men that the conduct of the party injured under the circumstances was not that of an ordinarily prudent man.

That these views of the law are correct, and their application to the facts of this case warranted its submission to the jury, we refer to the case of Phoenix Jellico Co. v. Robinson, 148 Ky., 26, from which we quote:

"It is quite clear from the evidence that the track, as well as the car wheels, were in bad condition, and that these conditions caused the car that injured Robinson to leave the track, but, it is said, that even if this were true, that Robinson was an experienced miner and knew the condition of the track and the wheels and assumed the risk of any accident that might occur as a result of these unsafe conditions. The doctrine of assumed risk is not and ought not to be regarded with much favor in cases like this. It is the duty of the mine owners, aside from statutory imposition, to exercise ordinary care to keep their machinery, appliances and premises in reasonably safe condition, and unless it is made plain that the danger is so obvious that a person of ordinary prudence would not under all the circumstances undertake the work, the owner will not be per-

mitted to escape liability for his negligence upon the ground that the miner assumes the risk. It is doubtless true that Robinson knew that the wheels and track were in bad condition, but he testified that he did not know that it was dangerous to operate the cars as he was doing at the time he was injured, and did not anticipate the accident that happened; and, that the evidence that the danger was so obvious as that no person of ordinary prudence would undertake the work, is not so satisfactory as to authorize us to hold that he assumed the risk.''

We also quote from the case of Houston Stanwood & Gamble Co. v. Schneider, 148 Ky., 651:

''Where the master or some one acting in his place promises to remedy the defect complained of, the servant by continuing in his employment for a reasonable time after said promise does not assume the risk of injury from the defect unless the danger was so patent that no person or ordinary prudence would have continued to work.''

We also quote from the case of Louisville Hotel Co. v. Kaltenbrun, 26 R., 299:

''We do not understand the rule to be that the servant, after obtaining knowledge of the danger and, complaining of it to his employer, is precluded from continuing in his service, if the employer promises to repair, unless the danger is so imminent and manifest that no prudent person would be justified in taking the risk of continued service.''

See also Angel v. Jellico, 25 Ky. Rep., Part 1, page 108.

We are of the opinion that the lower court erred in peremptorily instructing the jury, and the case is, therefore, reversed.