## Poynter v. Alfred Struck Company.

(Decided March 14, 1916.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Number Four).

1. Negligence—Contributory Negligence.—A person who drives through a door or under a shed right before his eyes, must take notice of the size thereof, and not place himself in a position where there is liability of his being struck.

2. Negligence—Contributory Negligence—Question for Jury.—Contributory negligence is usually a question for the jury, but where from the evidence there is no room for honest difference of opinion among intelligent men, it is a question for the court, and a peremptory instruction is proper.

ARTHUR B. BENSINGER and J. VERSER CONNER for appellant.

FRED FORCHT, JR., for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Appellee is in the lumber business in Louisville, Kentucky, and appellant was employed by it as a driver for two or three months before the accident happened which is involved in this action.

Until the day before the accident happened appellant had been driving one of appellee's one-horse wagons, at which time he was directed to and did take charge of and drive a larger and taller wagon drawn by two horses, and the accident occurred when he was attempting to back the larger wagon with the two horses hitched to it into a shed at the close of the second day's work with this team and wagon. The company uses many wagons in its business, which are housed at night in a long open shed, inclosed upon the back side only, and covered by a roof that slopes toward the front, so that the roof at the front of the shed is about six and one-half feet above the ground and supported in position by large posts, which also serve to divide the shed into compartments or stalls.

Upon the evening of the accident all of these stalls were occupied by other wagons except the one into which appellant intended to back his wagon. His wagon had a box bed with a seat near the front end, which was so high that there was only about three inches space between it and the roof of the shed. Appellant drove his wagon along the front of this shed and stopped the team at the proper place to back it into the vacant stall, when, as he testifies, he turned the heads of the horses to one side for the purpose of backing the wagon into the shed, but before he made any move or gave any signal to back, and before he was ready to do so, the horses suddenly shook their heads and began to back violently, with the result that his body was caught between the roof of the shed and the top of the wagon seat and crushed.

He testifies that he attempted to stop the horses when they began backing by striking them with the lines, but without effect, and that while he was engaged in an effort to control the horses, and before he had time to discover or realize his danger the accident occurred.

He alleges in his petition that this accident resulted to him (1) from the negligence of the company in furnishing him a team of horses which were not reasonably safe, of which fact he was at the time of the injury ignorant, and which fact was known to the company, or could have been known by it by the exercise of ordinary care; (2) from the negligence of the company in failing to furnish him a reasonably safe place to work and negligently maintaining a shed so low that there was a space only three inches between the seat of the wagon and the roof of the shed; (3) from the negligence of the company in failing to warn him of the dangerous and vicious propensities of the horses, and negligently directing him to back the wagon into the shed under circumstances known to it to be dangerous, but unknown to appellant.

The allegations of the petition were controverted by answer, and a plea of contributory negligence entered, which was denied by reply.

This case was tried twice in the lower court. Upon the first trial, at the conclusion of appellant's testimony, and again at the conclusion of all the testimony, a motion was entered by appellee for a directed verdict, which was overruled and the case submitted to the jury, resulting in a verdict in favor of appellant for $1,625.00.

Before judgment was entered thereon, appellee filed a motion and grounds for a new trial, which motion was sustained, and a new trial granted upon the ground that the court erred in overruling the motion for a peremptory instruction.

Upon the second trial, at the conclusion of appellant's evidence, a motion was sustained to direct the jury to find for appellee, and a judgment was entered dismissing appellant's petition.

To reverse that judgment, and seeking to have a judgment entered in his favor upon the verdict of the first trial, appellant is appealing.

It is conceded that appellant was required to back the wagon into the shed, but that the manner of his doing so was left to his discretion. Counsel for appellant argue that in view of the fact that he was required to

back this wagon into the shed, he was not furnished a reasonably safe place in which to do his work when the roof of the shed was so low, but their principal contention is that the accident was approximately caused by the vicious backing habit of the horses, of which he did not know, but which the company knew, or could have known, and of which it did not inform him.

In the case of B. F. Avery & Sons v. Lung, 32 Ky. L. R., 702, this court stated this rule:

"If an adult assumes risks incident to the place where he works, and does so with full knowledge of conditions, then there is no law in this State that makes the master liable for injury that befalls him on account of the conditions so assumed."

To the same effect are the cases of Wilson v. Chess & Wymond Co., 117 Ky., 571; Nelson Bethel Clothing Company v. Pitts, 131 Ky., 65; Kelly v. Barber Asphalt Co., 93 Ky., 363; Daniels v. New England Cotton Yarn Co., 188 Mass., 260.

In the case of Jones v. L. & N. Railroad Co., 95 Ky., 576, approved in Flaig v. Andrews Steel Co., 141 Ky., 391, this court said: "The master may be allowed to presume, in the absence of knowledge or some warning to the contrary, that an adult servant has sufficient knowledge to operate simple tools and devices, and to conduct and participate in simple operations without special warning or instructions."

And still more in point are this court's utterances in the case of Paducah Pole & Timber Co. v. Brockwell, 161 Ky., 426:

"Where a person drives through a door or under a trestle, right before his eyes, he must take notice of the size of the door or the trestle, and not place himself in a position where there is a liability of his being struck."

And in the case of Interstate Coal Co. v. Deaton, 148 Ky., 160: "While he claims that he did not know of the dangers, there are some things that one must know. He must know those things which are right before his eyes and which he himself admits having seen."

To which we may add, "or which he could have seen by the exercise of ordinary care." Bailey on Master and Servant, page 826; Whitson v. American Bridge Co., 158 Ky., 814; Williams v. L. & N. R. R., 111 Ky., 822; American Tobacco Co. v. Adams, 137 Ky., 414; Harper v. I. C. R. R., 115 S. W., 198; Lee v. C. & O. Railway Co.,

18 K. L. R., 829; Miller v. Grieme, 65 N. Y. Sup., 813; Carroll v. Boston Coal Co., 195 Mass., 399.

Appellant in the instant case at the time of the accident was engaged, in broad daylight, in backing a wagon into a shed where, as he admits, he could, if he had looked, have seen and known the size and condition of the opening through which he was going to drive, and of the full danger incident thereto. In fact, everything about the opening was so apparent that nothing could have been plainer. If not in fact a barn door, it was at least as "plain as a barn door," and it is equally as plain that the danger was so obvious that appellant is not in a position to say that he did not know of it and on account thereof was not furnished a reasonably safe place in which to do his work.

2. Appellant contends, however, that the shed was only an intervening cause of the accident; that the proximate cause was the vicious habit of the horses in backing, and, appellee having knowledge of this habit, and failing to apprise him of same and to furnish him with a whip necessary to control the horses in backing, that he was entitled to a submission of his case to the jury. Citing Watson v. Ky. & Ind. Bridge Co., 137 Ky., 619; Milwaukee R. Co. v. Kellogg, 94 U. S., 469; Louisville Home Tel. Co. v. Gasper, 123 Ky., 128; and 29 Cyc., 488-502.

Appellant testifies that these horses had a vicious and dangerous habit of backing suddenly and violently and until they struck something, or until struck with a whip, and in this he is corroborated by Sam Harshfield, who had driven these same horses for nearly a year before appellant began to drive them; and Harshfield testifies that he, nearly a year before this accident, had informed appellee's stable boss, who was superior in authority to appellant, of said vicious and dangerous habit, and of the necessity of the driver having a whip with which to control them. Appellant was not furnished with a whip.

We are not satisfied from the evidence that the habit of these horses in backing was either vicious or dangerous, or as shown, that they were other than good backers. Horses when started forward that will pull until they strike something that stops them are good pullers, and we are not sure but that horses when backing that continue to back until something stops them are,

by the same standard, good backers.  Moreover, we are of the opinion from the evidence of appellant himself, that he, during the day and a half or two days in which he had been driving this team before the accident occurred, had sufficient opportunity to, and actually did, discover and understand, as well as he could have been told by the company, the habits and disposition of this team of horses in backing.  But even if we concede all that appellant contends for in reference to the horses' habits, appellee's knowledge and his own want of knowledge thereof, as we should upon this inquiry, since he had enough evidence to go to the jury, on these questions, we still think he failed to make out such a case as should have been submitted to the jury.  With the knowledge which by the exercise of ordinary care he was bound to have under the circumstances in this case, that the roof of the shed under which he was going to back was but three or four inches higher than the seat of the wagon, we are unable to escape the conclusion that his evidence proves affirmatively and conclusively that he was guilty of contributory negligence when he attempted to stand in the body of and behind the seat of that wagon and back it under that roof.  To avoid accident he would have had to stoop down in the wagon so low that he would have been entirely behind the wagon seat, and his view of the horses entirely obstructed, from which position he would have been unable to exercise any control over the horses.

He testifies, and so does Harshfield, that it would have been dangerous to attempt to back these horses by the bridle reins standing on the ground in front of them; but even if we may concede that that was true, it would not have been nearly so dangerous as the method he adopted; and there was still another method that he might have adopted, which is not shown to have been dangerous, and which no doubt would have been entirely safe, and that was to stand on the ground by the side of the wagon, and with the lines, from that position, to have backed the horses.

We, however, do not rest our conclusion alone upon the fact that he might have pursued another and safe method, although that would furnish a sufficient ground therefor, since we are not convinced from the evidence that the proximate cause of this accident was the habit

of these horses, and that the roof of the shed furnished only an intervening cause.

Three causes no doubt contributed to this accident, namely: the backing of the horses, the lowness of the shed, and appellant's attempt to perform the feat while standing in the wagon. If required to select from the three the one that was the proximate cause, we are not sure but. that we would select the last. It certainly was negligence upon his part without which the accident would not have happened, and of such a positive character that there appears to us no room for honest difference of opinion among intelligent men, but that appellant was guilty of contributory negligence, and that the question therefore was for the court and not the jury. Conway v. L. & N. R. Co., 135 Ky., 229; T. B. Jones & Co. v. Pelly, 128 S. W., 305; Dolfinger v. Fishback, 12 Bush, 474; Morris v. L. & N. R. Co., 22 K. L. R., 1593.

Having reached this conclusion, it is unnecessary to discuss the authorities cited for appellant, since his case is differentiated therefrom by the existence here of contributory negligence as above indicated.

Wherefore the judgment is affirmed.