## Cecil v. Oertel Company.

(Decided June 19, 1931.)

826

HUBBARD & HUBBARD for appellant.

O'NEAL & O'NEAL and CLEM W. HUGGINS for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER.—
Affirming.

James G. Cecil, appellant and plaintiff below, insti-
tuted this suit in the Jefferson circuit court against the
Oertel Company, a corporation, and Edward P. Quino.
The Oertel Company is engaged in the manufacture and
sale of soft drinks and delivers its manufactured prod-
ucts by motortrucks to customers in Louisville.  E. P.
Quino is engaged in the restaurant and soft drink busi-
ness at 601 West Market street.

There is a basement in connection with Quino's
building which may be reached by an opening from the
pavement.  This opening has trap doors of metal grating
which, when closed, are flush with the street.  Two skids
reaching from the floor of the basement to the outer end
of the opening immediately beneath the trap doors, form
an incline on which boxes and barrels may slide from the
pavement.

It is alleged in the petition that on or about the 17th
day of June, 1929, appellant was walking east on the
sidewalk in front of Quino's place of business, when an
employee of the Oertel Company, without giving him
any warning, suddenly opened one door just as appellant
stepped on the other half of the trap door; that appellant
was thrown and caused to fall into the opening leading
to the basement; that appellant, by reason of his fall,
broke his right shoulder, and sustained other serious and
permanent injuries.

The defendants filed separate demurrers to the peti-
tion, and, the demurrers being overruled, they filed
separate answers.  The answers in addition to a general
denial contained a plea of contributory negligence and
the affirmative parts of the answers were traversed by
reply.  At the close of plaintiff's evidence, the court sus-
tained defendants' motion for a peremptory instruction
in their favor, and, from a judgment based on the directed
verdict of the jury, the plaintiff has prosecuted this
appeal as against the Oertel Company alone.

The evidence of appellant as to how the accident occurred is, substantially, that he was walking east on the right-hand side of the pavement, looking directly ahead, and it seemed to him, and he still has the impression, that some one ran into him or hit him; that he fell through an open door leading into Quino's basement; that his legs went between the skids used for unloading goods but that he caught with his arms and sustained a broken shoulder and other bruises and injuries. He did not know who ran into him and he did not see anyone moving around, nor did he know how nor where he was hit. He stated that there was nothing to prevent him seeing Herman (the driver of the truck) if the latter was in the act of opening the cellar doors as he approached.

He was asked if he made the following statement in giving his deposition on April 8, 1930. ''I was walking up the street. I walked on to one door and the other door was open and I just stepped right in it.'' He replied that he felt sure that he made the statement. On being asked whether Mr. Herman ran into him or whether he ran into Herman, he stated, ''Some man ran into me; I know I fell in the cellar door.'' He further stated that he did not know how far from the cellar door he was walking, but that he was sure he was on the right side of the pavement.

A photograph of the permises where the accident occurred is filed in the evidence. This shows that the surface of the concrete pavement is divided into 3 spaces by grooves or expansion joints running parallel with the curb and property line. There is no evidence as to the width of the sidewalk, but we judge from the expansion joints and general surroundings that it is between 15 and 18 feet in width. The doors of Quino's basement do not reach to the first expansion joint, and it appears that they do not reach one-third of the way across the pavement.

Charles Herman, the driver of appellee's truck, was introduced as a witness for appellant and stated that he had unloaded a keg of beer for Quino, and had rolled it over to the cellar door; that he had opened one of the doors and was in the act of reaching down for the other door when something hit him on the left side and knocked him over; that he looked around and saw a man lying across the cellar door; that he picked the man up and asked him if he was hurt; that he replied that he was not, and went on down Market street; that the door he

had opened was the one toward the west and in the direction from which the man was coming; that he did not see the man coming until the collision occurred; that the man who fell did not go into the hole at all but fell across the door. Herman further testified that there were no guards placed around the opening when he opened the door, and in reply to a question by the court, as to the custom in such cases, stated that he had been engaged in this character of work for a number of years and had never known of guards being placed around doors when opened for the purpose of moving goods into a basement.

The only question to be determined is whether the court erred in not permitting the case to go to the jury. In order to make out a case of negligence upon the part of appellee, it was incumbent upon appellant to produce some evidence tending to establish negligence or facts from which a natural inference of such might be drawn. Barksdale's Adm'r v. Southern Railway Co., 199 Ky. 592, 251 S. W. 656.

Under the scintilla rule as recognized in this state, a case should go to the jury when there is any evidence, however slight, tending to establish an issue. But by evidence, it is meant that there must be something of substance and consequence, not vague or uncertain matter lacking in the quality of proof or fitness to induce conviction. Langford's Executor v. Miles, 189 Ky. 515, 225 S. W. 246; Poll v. Patterson, 178 Ky. 22, 198 S. W. 567. As said in Gay v. Gay, 183 Ky. 238, 209 S. W. 11, 14:

> "In other words, the scintilla rule does not mean the making of something out of nothing. Mere conjecture or suspicion is not sufficient to constitute evidence."

The right of abutting owners to have openings in sidewalks, with proper covering such as trap doors, is often conferred by legislative authority, but, in the absence of such enactment, the right has come to be recognized by long-established usage and custom. That such doors are temporarily opened for the purpose of placing wares in, or removing them from, basements and cellars is a matter of common knowledge, and it is not negligence per se to open them.

If appellee's servant in this instance was guilty of any negligence, it did not consist in opening the door, but rather in not using proper precaution to prevent

pedestrians, in whose path the opening might be, from stepping into it, and, to guard against such an eventuality, appellee's servant was charged with the duty of using such care as is usually exercised by reasonably prudent persons similarly engaged. There is absolutely no showing that he was not using such care. Herman testified that he was standing facing the open door with one foot in it. He was in position to see and warn persons in whose path the opening lay. It was not in appellant's path, but, as shown by his evidence and the photographic exhibit, was at least more than one-half the distance between the expansion joints from it.

Appellant's evidence as to how the accident occurred is extremely uncertain and hazy and does not tend to show that appellee was remiss in any duty it owed to him or to establish facts from which actionable negligence upon the part of appellee may be inferred. Even if some negligence on the part of appellee had been shown, the evidence discloses that appellant was so wanting in ordinary care for his own safety that but for such negligence on his part, he would not have been injured.

There is a rule of law to the effect that a pedestrian in using a sidewalk has a right to assume, and to act upon the assumption, that the sidewalk is reasonably safe for travel and that he is not guilty of contributory negligence, if, by reason of temporary diversion of his attention, he fails to observe defects in, or obstructions upon the sidewalk. City of Providence v. Hunter, 231 Ky. 72, 21 S. W. (2d) 135; City of Ashland v. Boggs, 161 Ky. 728, 171 S. W. 461, Ann. Cas. 1916B, 1005; De Haven v. Danville Gas Light Co., 150 Ky. 241, 150 S. W. 322.

This, however, is not a case where one walked into an open door in his pathway by reason of temporary diversion of his attention, because appellee testified that he was walking quietly along, looking directly ahead, and in the exercise of ordinary care there is no reason why he could not have discovered the opening or why he could not have avoided the person with whom he came in collision.

There is no rule or law in this state, or in any other jurisdiction so far as our research discloses, excusing pedestrians in the use of a sidewalk from exercising the same degree of care as is usually exercised by ordinarily prudent persons under similar circustances; and the rule announced in the cases cited does not mean that a pedestrian may blindfold himself and proceed along a

sidewalk oblivious to the fact that other persons are using it, or that trap doors which are permitted along it may, temporarily, be open.

In the light of appellant's own evidence, the conclusion is unescapable that he either came in contact with a third person and was knocked or thrown against Herman, or that he was walking along looking directly ahead and heedlessly ran into him.

The question of contributory negligence is ordinarily one for the jury, but where the facts are such that there is no room for a reasonable difference of opinion among fair-minded and intelligent men, the court may, and should, pass upon it as a matter of law. Poynter v. Alfred Struck Co., 169 Ky. 126, 183 S. W. 461, 464; McMurtry's Adm'x v. Ky. Utilities Co., 194 Ky. 294, 239 S. W. 62; Louisville & N. R. Co. v. Eakin's Adm'r, 103 Ky. 465, 45 S. W. 529, 46 S. W. 496, 47 S. W. 872, 20 Ky. Ky. Law Rep. 736; Fuson v. New Bell Jellico Coal Co., 155 Ky. 96, 159 S. W. 619.

As the judgment of the lower court must be affirmed for reasons already indicated, it is unnecessary to pass on other questions raised or argued by counsel.

Judgment affirmed.