**Minnie A. BURNETT, Appellant,**

v.

**Barbara AHLERS et al., Appellees.**

Court of Appeals of Kentucky.

May 26, 1972.

**154**

Alan T. Slyn, David L. Proffitt, Louisville, for appellant.

James F. Donoghoe, Jr., Louisville, for Barbara and Robert Ahlers.

E. Preston Young, Louisville, for Ky. Farm Bureau Mut. Ins. Co.

Ronald R. Snyder, Jeffersontown, for Doris and Joseph Chandler.

EDWARD P. HILL, Jr., Judge.

A jury returned a verdict for Doris Chandler against both drivers involved in a two-car collision. She was a passenger in one of the cars. The appellant, Minnie A. Burnett, one of the drivers, argues among other things that there was no evidence of probative value tending to prove negligence on her part and she was, therefore, entitled to a directed verdict. We agree.

On January 27, 1967, the appellant was driving her husband's automobile west on Famous Way, a two-lane street in Jefferson County. Pauline Renfrow was a front-seat passenger and Doris Chandler was a rear-seat passenger in Mrs. Burnett's car. They were on their way to pick up another passenger and thence to work at P. Lorillard Corporation. A light snow was falling.

Appellee Barbara Ahlers, age 20, was driving her father's car east on Famous Way with her brother as a passenger.

The accident occurred just west of the intersection of Famous Way and Judge Boulevard. Famous Way is the dominant highway. Stop signs are provided for traffic entering Famous Way. A short distance west of the intersection, Famous Way curves south.

Before getting to the evidence on the question of fault, it should be shown in this opinion how the issues arose. Appellant, Minnie A. Burnett, first filed civil action against Barbara Ahlers and her father, Robert Ahlers, and the Kentucky Farm Bureau Mutual Insurance Company (hereafter Ky. Farm Bureau) in which Minnie's husband, Emory R. Burnett, joined claiming damages to his car and loss of its use. Minnie sued for pain and suffering, lost earnings, and for her medical expenses. Ky. Farm Bureau, Minnie's insurance carrier, was joined on the theory it was liable to Minnie under its uninsured motorist provision.

The second civil action was filed by Doris Chandler and her husband, Joseph Chandler, against the Burnetts, the Ahlers, and Ky. Farm Bureau.

The two actions were consolidated. The trial resulted in a verdict for Emory R. Burnett against the Ahlers for the damages to his car and for Doris Chandler in the sum of $2,300 against Minnie A. Burnett and the Ahlers.

After this appeal was perfected, Ky. Farm Bureau paid Doris Chandler the amount of her judgment, and she has moved this court to dismiss the appeal as to her. This motion is now overruled. See Bratton v. Speaks, Ky., 286 S.W.2d 526.

Four witnesses testified for appellant Minnie A. Burnett on the question of fault.

They were Pauline Renfrow, Doris Chandler, Richard Prewitt, and appellant Minnie A. Burnett.

The only witness to testify on behalf of appellee Barbara Ahlers was Barbara herself. Although her brother was in the car driven by Barbara at the time of the collision and was in court at the time of the trial, he did not testify.

Of the eleven "questions" presented, we shall discuss only one except to briefly refer to some evidence as to previous accidents and injuries of appellant Minnie A. Burnett. The dispositive question to which we now turn is whether there was any probative evidence produced on the trial which tended to charge appellant, Mrs. Burnett, with negligence; or stated another way, whether appellant, Mrs. Burnett, was entitled to a directed verdict on her claim against Barbara Ahlers and as to the claim of Doris Chandler.

We shall now review the evidence as it relates to the question of fault on the part of Mrs. Burnett.

The sum and substance of the testimony of Mrs. Burnett was that as she approached the intersection of Famous Way and Judge Boulevard, she observed a stopped car headed east on Famous Way with its signal lights indicating a desire of the driver to make a left turn onto Judge Boulevard; that she passed the stopped car without incident and while on her side of the road; that there was a sharp curve on Famous Way west of its intersection with Judge Boulevard and that "around the curve came a car on my side of the road, directly on my side of the road as it rounded the curve, and immediately the car passed back over sharply on its side and back again as if it was out of control. I immediately steered my automobile to the right * * * but I didn't get out of the way. She hit me in the side." The appellant, Mrs. Burnett, further testified that she was in her right-hand lane, traveling about 25 miles per hour.

The testimony of Pauline Renfrow substantiated that of Mrs. Burnett. Pauline stated that at no time did the Burnett car get over in its left lane of traffic; that it was traveling at a reasonable rate of speed; that she observed the Ahlers car "just seconds before" the collision; that she "became aware that Mrs. Burnett's car was being braked and pulling to the right and looked up to see what was going on and saw the Ahlers' car coming toward" the Burnett car; that at this time the Ahlers car was "in the middle of the street or in the righthand lane"; that at the time of the contact of the two vehicles, the Burnett car was partly off the road on her right.

Mrs. Renfrow also testified that as the Burnett car approached the intersection, she saw a car traveling east on Famous Way slowing down with its left blinker lights functioning indicating its desire to make a left-hand turn onto Judge Boulevard. This testimony is mentioned here to substantiate the testimony of Richard Prewitt whose deposition asserts that he was the driver of the car slowing down to make a left turn. The appellee Barbara Ahlers gives a completely different version as will be shown later in this opinion.

The third person to give evidence favorable to Mrs. Burnett was Doris Chandler, the back-seat passenger in the Burnett automobile. It should be noted in connection with weighing Mrs. Chandler's evidence that she was claiming damages from both Mrs. Burnett and the Ahlers. Doris stated that after they had passed the intersection, she "looked up and saw the car coming toward us, and I thought she was going to hit us head on and I screamed"; that she could "feel the (Burnett) car kind of swerve"; that she thought at the time of impact the Burnett car was "off the pavement." She also stated that the Burnett car passed another car which was preparing to make a left turn onto Judge Boulevard.

The fourth and last person to give evidence concerning the accident was Richard

Prewitt, a member of the U. S. Navy. He testified that at that time he knew appellee Barbara Ahlers; that at the time of the collision, he had stopped to let the Burnett car pass so he could make a left turn onto Judge Boulevard; that while he was "sitting there, the car passed * * * me and then I heard tires squealing * * * and then I heard the thud and I turned around and seen that the Chevy (Burnett car) had veered off to the right and landed off the road"; that the Ford (Ahlers car) "just about" hit him; that when he looked in his rear-view mirror, the Ahlers car was partly on the north side of Famous Way, which was in the Burnett lane of traffic; that his car was standing stopped after the collision. Prewitt, who was a resident of the community not far from the scene of the accident, testified that he was acquainted with Barbara from their school days; that prior to the accident, Barbara was following "pretty close" behind him, "close enough for me to feel un-at-ease and give a little more gas to get from in front of her"; that she was "tailgating" him; that Barbara was "going faster than the speed limit"; that the Ahlers car attempted to pass him but was prevented from doing so by oncoming, westbound traffic; that the Burnett car came to a stop about one car length west of the intersection.

Prewitt testified that he did not see another car on Judge Boulevard which turned onto Famous Way just prior to the accident as claimed by the appellee Barbara Ahlers.

Prewitt stated that as the Burnett car passed him, it was traveling at about 25 miles per hour and in its lane of traffic.

We turn now to the testimony of appellee Barbara Ahlers in quest of some evidence of probative value on the question of negligence on the part of Mrs. Burnett. No other witness testified for Barbara Ahlers.

Barbara's theory of the accident, briefly stated, was that as she approached Judge Boulevard, she did not see the Prewitt car, but that she observed another car in the process of stopping at the stop sign on the southeast corner of the intersection preparing to make a left turn onto Famous Way. Although she had the right-of-way and did not know the occupant of that car, she testified she slowed down to a stop twenty feet back from the intersection and "nodded" to the occupant of the car on Judge Boulevard to proceed with his left turn; that while she was stopped appellant, Mrs. Burnett, caught the rear of her car thereby causing the accident. Barbara did not produce the driver of the "other car" she says she was trying to assist. Neither did she introduce her brother who was in her car at the time of the accident and who was present at the trial. The car of appellant, Mrs. Burnett, was struck on its left side. It would have to have been on its *wrong* side of the road just prior to the impact for it to have been struck on its left side, assuming the facts given by appellant's four witnesses to be true. The accident occurred so close to the intersection and so soon after passing the Prewitt car that it was physically impossible for the Burnett car to have been in its left (south) lane of traffic. Prewitt gave the names and addresses of his sister, his brother, and others who were present in his car, but Barbara did not call any of them as witnesses to contradict any of the testimony of Prewitt.

Running through Barbara's testimony are many instances of inconsistencies and contradictions, to say nothing of absurd and ridiculous evidence. For instance, she said that as she approached the curve west of the intersection, she was traveling at five miles per hour; that as she came around the curve she was making two miles per hour.

Another obvious fallacy and physical impossibility in Barbara's testimony can be seen when we take as true her evidence that she had stopped before the accident. Her car was struck on its left side near the rear-left fender. After the impact, her car came to a stop with its front end head-

ed in a southerly direction near the south side of Famous Way. Had it been stopped while on its side of the road and struck in its left rear, the front end would have headed across the road in the opposite direction to which it headed after the accident.

When asked to explain how far back from the intersection her car came to a stop before the impact, Barbara said: "Pretty far back. I have a pretty bad habit of doing that." If the Prewitt car was not stopped at the intersection, there was no occasion for her to stop 20 feet or more back of the intersection.

■ Fully recognizing the rule that it is the province of the jury to weigh the evidence, it is for the court to determine whether evidence has enough probative value to be weighed.

In Wadkins' Adm'x v. Chesapeake & Ohio Railway Co., Ky., 298 S.W.2d 7, 9, in considering the identical question with which we are here concerned, this court in a very thorough and well-written opinion said the following:

"It is possible that initially sufficient evidence at the close of the plaintiff's case may lose every vestige of its persuasive character in the light of the defendant's evidence. Thus what was once more than a scintilla may, upon ultimate analysis, be no longer that sufficient quantum of proof required to present a true issue of fact to the jury. To restate in another form the rule of the Nugent case, which was fundamentally sound, the governing principle is: When the evidence given at the trial with all inferences that the jury could justifiably draw from it would not support a verdict for the plaintiff, because the plaintiff's evidence whether taken alone or in the light of all the evidence is not of sufficient probative value to induce conviction in the minds of reasonable men, a verdict should be directed for the defendant.

"It may be argued that in passing upon the probative value of the evidence the court is invading the province of the jury. Such argument overlooks the fact that the court has a very definite function to perform even in jury cases. It has long since been settled that the court may examine evidence to determine its sufficiency in law, and the exercise of the inherent power to take the case from the jury by directing a verdict does not violate the constitutional right of a jury trial. Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S.W.2d 877, Masonic Widows and Orphans Home and Infirmary v. City of Louisville, 309 Ky. 532, 217 S.W.2d 815; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Galloway v. United States, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458.

"It may also be argued that if we permit the trial court to consider the probative value of the plaintiff's evidence in the light of the defendant's evidence, we are allowing the court to determine questions of credibility and to weigh the evidence. To a limited extent this may be true. However, it must be noted that the court is not evaluating the evidence to determine the merits of the controversy, which is the jury's province, but it is exercising a judicial function in determining whether or not a jury issue has been presented. See Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231. No reason is apparent why the trial judge may not render a value judgment on the sufficiency of the plaintiff's proof at the conclusion of all the evidence in the same manner as he may do at the close of the plaintiff's evidence. Yet no one would contend that the court may not examine the quality of the evidence at that earlier state of the proceedings.

\*    \*    \*    \*    \*    \*

"We are of the opinion that the trial judge in this case was properly exercising a judicial function when he determined as a matter of law that a true

**158**

jury issue was not presented with respect to the violation of statutory duties by the railway company because plaintiff's evidence was not of sufficient probative value. The directed verdict was proper as to this charge of negligence."

See also Harris v. Cozatt, Ky., 427 S.W.2d 574; Cecil v. Oertel Company, 239 Ky. 825, 40 S.W.2d 328; Hauser v. Public Service Company of Indiana, 271 Ky. 206, 111 S.W.2d 657; and Louisville, R. Co. v. Prather, 290 Ky. 791, 162 S.W.2d 780.

In his closing argument, counsel for appellees brushed off the question of the sufficiency of the evidence of Mrs. Burnett's negligence by saying it was an "academic" one. He hammered on the evidence of other car wrecks in which Mrs. Burnett was involved, two previous to and one after the instant wreck of January 1967, to which we refer in the succeeding and concluding parts of this opinion.

Evidence of other injuries, whether received in an automobile accident or in a bullfight, would be competent if such evidence had any bearing on the pain or disability claimed as a result of the subject injury. But to emphasize the cause or fault which contributed to produce a previous or subsequent injury is calculated to lead a jury to conclude that the party so injured is a reckless driver, or "accident prone."

█ We believe that due to the extensive interrogation of some of the witnesses relative to previous and subsequent car accidents of Mrs. Burnett and the emphasis placed thereon by counsel, together with questions by prospective jurors, the jury was influenced and biased. We do not reverse this case on this ground for the simple reason that counsel for appellant brought up the other accidents in his opening statement of the case. He undertakes to excuse himself by saying that he anticipated appellees' counsel would inject the other accidents and moved the court, prior to the trial, to prevent reference thereto, and having been overruled by the court in

his efforts to keep out all references to other accidents, he concluded he would soften the impact of the evidence of other accidents by adverting thereto in his opening statement. This may have been a good, practical maneuver, but apparently it did not work in the present instance. Of course, some evidence of other accidents may have been, and probably was, competent. It was the duty of counsel for appellant to pursue a course of separating the good from the bad.

█ It is concluded that there was no substantial, probative evidence tending to charge appellant Minnie A. Burnett with any negligence. It follows, therefore, that she was entitled to a directed verdict both on her claimed damages against the Ahlers and on the claim of Doris Chandler. We reverse the case with directions to grant appellant Minnie A. Burnett a new trial on the question of damages only.

It is unnecessary to discuss the ten other questions presented in appellant's brief.

All concur.